**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

**MARCIA J. PANGBURN,**

            **Plaintiff,**

    **-against-**

**JAVIER-LUIS MARTINEZ, ALBANY COUNTY**
**DEPUTY SHERIFF; PHILIP J. MILANO, ALBANY**
**COUNTY DEPUTY SHERIFF; CRAIG APPLE,**
**ALBANY COUNTY SHERIFF; and ALBANY**
**COUNTY,**

            **Defendants.**

─────────────────────────────

**COMPLAINT AND DEMAND**
**FOR JURY TRIAL**

**CIVIL ACTION**
**NO.**   1:16-CV-1528 (MAD/DJS)

**HON.** _____

**HON.** _____

      Plaintiff, Marcia J. Pangburn, by her attorney, Lewis B. Oliver, Jr., Esq., the Oliver

Law Firm, as and for her complaint, alleges as follows:

## STATEMENT OF THE CASE

      1.    This is a civil rights action in which plaintiff Marcia Pangburn seeks

compensatory and punitive damages for illegal detention, use of excessive force, unlawful

search and seizure, and malicious prosecution, in violation of the Fourth Amendment of the

United States Constitution from the defendants Javier-Luis Martinez and Philip J. Milano,

and the Albany County Sheriff's Department who arrested and prosecuted plaintiff for

resisting arrest and obstructing governmental administration as she grieved for her

−1−

deceased brother in a cemetery on July 13, 2014.

## JURISDICTION

2.      The plaintiff is a citizen of New York State and resides in Albany County and is a resident of the Northern District of New York

3.      Upon information and belief all the defendants are citizens of New York State and Albany County and are residents of the Northern District of New York.

4.      Plaintiff's claims are pursuant to 42 USC 1983 against defendants for violation of plaintiff's clearly established federal constitutional rights to be free from unreasonable search and seizure, illegal detention, use of excessive force, and malicious prosecution under the Fourth Amendment to the United States Constitution.

5.      This court has original jurisdiction over plaintiff's first, third, fifth, and sixth claims pursuant to 28 USC 1331 and 1343(3) and (4), since these actions seek redress for the violation of plaintiff's federal constitutional and civil rights protected by the Fourth Amendment.

6.      This court has jurisdiction over plaintiffs second, fourth, and seventh claims pursuant to the pendant jurisdiction of the court at 28 USC 1376(a) since these actions seek redress for violations of plaintiffs rights under the common law of New York that are so related to the federal claims they are part of the same case or controversy.

7.      The defendants' violations of Ms. Pangburn's rights were committed in Albany County, New York which is within the Northern District of New York.

## PARTIES

8.      At all times relevant to this complaint, plaintiff Marcia Pangburn is a citizen of the United States and of New York State and resided in the Northern District of New York.  The residence of plaintiff Pangburn is located at 1278 Thompsons Lake Road, East Berne, New York 12059 in the County of Albany.

9.      Defendant Javier-Luis Martinez was a deputy sheriff employed by the Albany County Sheriff's Department, and in doing the acts and things hereafter complained of, he was acting under color of state law and within the scope of said employment and in furtherance of his employer's interests and in his representative capacity as stated. The principal offices of the Albany County Sheriff's Department are located at 16 Eagle Street, Albany, New York 12207.

10.     At all times relevant to this complaint, in doing the acts and things hereinafter complained of, defendant Martinez was acting within the scope of his employment as a patrolman of the Albany County Sheriff's Department, and was using his authority in furtherance of his employer's interests and was acting in his capacity as a police officer, and said defendant was acting under color of state law.

11.     Defendant Martinez's acts hereinafter complained of were carried out intentionally, recklessly, with malice and gross disregard and callous indifference for plaintiff's rights.

12.     Defendant Philip J. Milano was a deputy sheriff employed by the Albany

County Sheriff's Department, and in doing the acts and things hereafter complained of, he was acting under color of state law and within the scope of said employment and in furtherance of his employer's interests and in his representative capacity as stated. The principal offices of the Albany County Sheriff's Department are located at 16 Eagle Street, Albany, New York 12207.

13.     At all times relevant to this complaint, in doing the acts and things hereinafter complained of, defendant Milano was acting within the scope of his employment with the Albany County Sheriff's Department, and was using his authority in furtherance of his employer's interests, and said defendant was acting under color of state law.

14.     Defendant Milano's acts hereinafter complained of were carried out intentionally, recklessly, with malice and gross disregard and callous indifference for plaintiff's rights.

15.     Defendant Craig Apple was the Albany County Sheriff employed by the Albany County Sheriff's Department, and in doing the acts and things hereafter complained of, he was acting under color of state law and within the scope of said employment and in furtherance of his employer's interests and in his representative capacity as stated. The principal offices of the Albany County Sheriff's Department are located at 16 Eagle Street, Albany, New York 12207.

16.     At all times relevant to this complaint, in doing the acts and things

hereinafter complained of, defendant Apple was acting within the scope of his employment with the Albany County Sheriff's Department, and was using his authority in furtherance of his employer's interests, and said defendant was acting under color of state law.

17.     Defendant Apple's acts hereinafter complained of were carried out intentionally, recklessly, with malice and gross disregard and callous indifference for plaintiff's rights.

18.     The defendant County of Albany is a municipality organized under the New York County Law, and the principle offices of Albany County are located at 112 State Street, Albany, New York 12207.

19.     At all times relevant to this complaint, the defendants Martinez and Milano were employed as public officers in the Sheriff's Department of the County of Albany, and they were agents and employees of the Albany County Sheriff, and were acting pursuant to and within the scope of their authority as employees of the Albany County Sheriff, and under the common law of the State of New York the Albany County Sheriff and/or Albany County are liable for their actions and omissions pursuant to the doctrine of respondeat superior.

## STATEMENT OF FACTS

20.     On the evening of July 13, 2014 plaintiff Pangburn was at a housewarming dinner at her niece's new home in Knox, New York.

21.     At or around the area of about 9:00 PM to 10:00 PM plaintiff consumed one

or two drinks prepared by her brother-in-law.

22.     At approximately 11:30 PM plaintiff Pangburn drove her minor daughter to the home where they live at 1278 Thompson's Lake Road and dropped her off.

23.     After dropping her daughter off, plaintiff drove to Thompson's Lake Cemetery on Thompson's Lake Road.

24.     Many members of plaintiff's family are buried in Thompson's Lake Cemetery including her father, who died in 2008, and her brother, who died in September 2013, her deceased infant son, her deceased grandparents, and other family members.

25.     Thompson's Lake Cemetery is a privately owned cemetery located on private property. Plaintiff's family are long time residents of the area, and her family owne a number of burial plots in the cemetery.

26.     Plaintiff Pangburn was upset over the recent death of her brother and was missing him and was very sad, and she decided that she would visit his grave in the Thompson's Lake Cemetery which is very nearby to her home.

27.     Plaintiff's home is less than 1/4 mile away from the cemetery.

28.     At about approximately 11:30 PM to midnight plaintiff drove to the cemetery and parked her car next to her Father's gravestone. Plaintiff turned off the engine but kept the vehicle's lights and radio on.

29.     Plaintiff's vehicle was parked in the cemetery approximately 100 feet from the nearest public road, which was Thompson's Lake Road, which is also known as New

York State Route 157.

30.     Plaintiff Pangburn was praying and crying at the gravesites of her family for a period of several hours.

31.     During this time while at the cemetery plaintiff Pangburn did not consume any alcohol, and there was no alcoholic beverage in her car or in the cemetery. The only alcohol she consumed that night was at approximately 9:30 PM with her family several hours prior to going to the cemetery. After leaving her niece's home she consumed no other alcohol.

32.     Plaintiff was grieving and crying and extremely emotional over the loss of her brother. She cried for several hours in the cemetery.

33.     At approximately 2:30 AM Deputy Sheriffs Martinez and Milano arrived in separate police vehicles, and they drove up across the grass into the cemetery and parked their vehicles behind plaintiff Pangburn's car which was turned off and not running, but the radio was still playing.

34.     The officers questioned plaintiff Pangburn if she had been drinking. She informed the deputies that she had two mixed drinks prepared by her brother-in-law at a family dinner many hours before.

35.     The deputies requested that she take field sobriety tests.

36.     Plaintiff Pangburn felt that she could not refuse and had no choice but to comply and walked down a path out of the cemetery down to the side of the road on

Thompsons Lake Road, State Route 157.

37.     The deputies administered a series of field sobriety tests on Route 157 which involved plaintiff Pangburn walking on a straight line, and standing on one leg while counting from 1000.

38.     The deputies did not explain these tests to plaintiff Pangburn very well and she was in an emotionally and physically exhausted state.

39.     Plaintiff's eyes were very teary from having cried so much. Plaintiff was 57 years old, and she was tired because it was so late.

40.     Plaintiff Pangburn cooperated to the best of her abilities and believed that she completed the sobriety tests pretty well.

41.     Plaintiff was certainly not drunk and did not appear intoxicated.

42.     Plaintiff was not driving and had not been driving for at least 2 ½ hours.

43.     Plaintiff had parked in the cemetery, which is not a public road, for at least 2 ½ hours without operating her vehicle.

44.     Defendant was not "operating a vehicle" within the meaning of VTL 1194(1)(b).

45.     After the field tests, one of the deputies requested that plaintiff Pangburn take a breath test.

46.     When the officer requested plaintiff Pangburn to take a breath test, she told him that she did not want to and requested to go home.

−8−

47.     At this point, plaintiff had not been told that she was detained or under arrest or that she was not free to leave.

48.     Plaintiff walked several steps in the direction of her home and was rushed by the two deputies and they both roughly grabbed her.

49.     Plaintiff Pangburn did not attempt to "run away" as claimed in the deputies' complaint, and that statement is false. Plaintiff Pangburn took several steps in an attempt to walk home.

50.     Before plaintiff Pangburn attempted to walk away, she had not been informed by the deputies that she was under arrest or that she was being detained. The deputies did not tell her that she could not leave, and plaintiff had not done anything illegal.

51.     Plaintiff reasonably believed that it was her right as a citizen to walk home.

52.     After the two deputies grabbed plaintiff, they requested that she cooperate and take a breath test, which plaintiff refused.

53.     One of the deputies told stated words to the effect "do me a favor and put your hands behind your back."

54.     As soon as plaintiff attempted to comply, both deputies rushed her and pushed her, causing plaintiff to lose her balance and fall down to the ground.

55.     When defendants Martinez and Milano rushed and grabbed plaintiff Pangburn, it caused plaintiff to lose her balance and fall down to the street.

56.     At no time did prior to being told to put her hands behind her back and taken to the ground by the defendants did the deputies tell plaintiff Pangburn that she was under arrest, being detained, or that she was not otherwise free to walk home.

57.     Plaintiff Pangburn had no idea why she was being told to put her hands behind her back, or why she was being questioned and detained.

58.     If defendants Martinez and Milano had informed plaintiff that she was being detained or if she was being placed under arrest, she would have complied with the defendants' orders.

59.     At no time did plaintiff refuse to place her hands behind her back.

60.     After falling down to the street, plaintiff remained on the ground for a moment.

61.     Defendants Martinez and Milano lifted plaintiff up and quickly grabbed both of plaintiff's hands and placed them behind her back.

62.     Plaintiff Pangburn's hands were then handcuffed behind her back.

63.     Plaintiff was arrested for driving while intoxicated.

64.     The deputies handcuffed plaintiff almost immediately after knocking her to the ground.

65.     After plaintiff was handcuffed, the defendants placed her in the back of an Albany County Sheriff's Department vehicle.

66.     Plaintiff was informed by the defendants that they were going to take her to

the police station unless she agreed to take a breath test.

67.     Plaintiff did not consent to blowing into the device, and she was not advised that she had a right to refuse.

68.     Plaintiff agreed to blow into the device so that she would not be arrested and would not have to go to the police station while handcuffed.

69.     Plaintiff blew into the device as the deputies directed her to, but was unable to provide a sufficient breathalyzer sample.

70.     Plaintiff attempted to provide a sample again, but was once again unable to.

71.     Plaintiff was taken to the Albany County Sheriff's barracks and detained.

72.     The defendants never informed plaintiff Pangburn that she was under arrest.

73.     After her arrival at the police station, plaintiff was fingerprinted and photographed for her mug shot, and she was administered a third (or fourth) breathalyzer test which showed that she was not intoxicated and was not impaired.

74.     Plaintiff had a .01 alcohol blood content (BAC) reading.

75.     Plaintiff's BAC was below the level DWI which is .08 BAC or DUI which is .06 BAC.

76.     Plaintiff was released and a deputy drove her home without making any charges against her.

77.     Two days later, one of the deputies came to plaintiff Pangburn's home and served her with two summons for resisting arrest in violation of New York Penal Law

205.30 and obstruction of governmental administration in violation of Penal Law 195.05 with instructions to appear in the Town Court of the Town of Berne.

78.     There are no allegations in the informations or superseding informations completed by the defendants that indicate that plaintiff Pangburn was observed driving or operating a motor vehicle on a public or private road or parking lot.

79.     At no point did plaintiff refuse to place her hands behind her back, and any claim to the contrary is patently false and refuted by dash camera evidence.

80.     Plaintiff Pangburn also made no attempt to "run away", as claimed by the defendants.

81.     The statements in the deputy's complaint that plaintiff resisted being handcuffed, or that she took her hands and clenched them tightly to her chest to avoid being handcuffed, are also false and refuted by dash camera evidence.

82.     On or around February 2015, plaintiff Pangburn's criminal case was transferred from the Town of Berne Town Court to the Town of New Scotland Town Court.

83.     On July 7, 2015 plaintiff was schedule to have a jury trial on the charges of obstructing governmental administration and resisting arrest in the Town Court of the Town of New Scotland.

84.     On the morning of July 7, 2015, prior to the start of the jury trial, Brittany L. Grome, Esq., the Assistant Albany County District Attorney assigned to prosecute plaintiff,

called the Clerk of the Town Court of the Town of New Scotland and the jury panel was dismissed at the request of Assistant District Attorney Grome.

85.     The jury trial was unilaterally canceled without notice to plaintiff Pangburn or her defense counsel, and at 9:30 AM in the morning on July 7, 2015 plaintiff objected to the dismissal of the jury panel and denial of her jury trial. Plaintiff also opposed the District Attorney's oral motion to dismiss the charges in the interest of justice unless the grounds for dismissal were that the plaintiff Pangburn was innocent of the charges of resisting arrest and obstructing governmental administration.

86.     On July 8, 2015 Assistant District Attorney Grome made a written motion to dismiss the charges of obstructing governmental administration and resisting arrest in the interest of justice pursuant to Criminal Procedure Law 170.40 (CPL).

87.     On July 20, 2015 plaintiff opposed the motion to dismiss in the interest of justice and demanded a jury trial unless the charges of obstructing governmental administration and resisting arrest were dismissed on the grounds of innocence.

88.     On October 9, 2015 the charges of obstructing governmental administration and resisting arrest against plaintiff were dismissed in the interest of justice by Hon. David J. Wukitsch, Town Justice of the Town of New Scotland, on motion of the Assistant District Attorney, over the objections of plaintiff's attorney that plaintiff had been deprived of her right to a jury trial.

89.     Plaintiff Pangburn was required to appear in court on numerous occasions,

including but not limited to the following dates: Berne Town Court on September 9, October 14, November 18, December 16, 2014, and January 13, 2015, and in Albany Supreme Court on February 18, 2015, and in new Scotland Town Court on May 7, 2015, and July 7, 2015.

90.     On November 23, 2015 a Notice of Claim was duly served on Craig D. Apple, Albany County Sheriff, Deputy Javier-Luis Martinez, Deputy Phillip J. Milano, and Albany County.

91.     More than 90 days have elapsed since service of the notice of claim upon the defendants and filing this complaint, and the adjustment or payment of the claim has been neglected or refused.

92.     Plaintiff has complied with the requirements of General Municipal Law 50-e, 50-i, and 50-h with regard to the pendant State claims set forth herein.

## FIRST CLAIM—FOURTH AMENDMENT ILLEGAL DETENTION

93.     The allegations contained in paragraph 1 to 92 are hereby repeated and realleged as if fully set forth herein.

94.     Plaintiff's first claim is against defendants for violation of plaintiff's clearly established rights to be free from illegal detention under the Fourth Amendment to the United States Constitution.

95.     On July 13, 2014 defendants, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so, arrested plaintiff for driving while intoxicated and deprived plaintiff of her freedom of movement.

96.     Defendants placed plaintiff Pangburn in handcuffs and arrested plaintiff's movements for approximately three hours without probable cause.

97.     In arresting plaintiff's freedom of movement on July 13, 2014 and thereafter, defendants intended to confine her.

98.     Plaintiff was detained and confined and her freedom of movement was curtailed by defendants.

99.     Plaintiff was conscious of defendant's confinement of him.

100.    Defendants did not have probable cause to arrest plaintiff for driving while intoxicated.

101.    Defendants did not have a warrant to arrest plaintiff.

102.    Plaintiff did not consent to defendant's confinement of her.

103.    The confinement was not otherwise privileged.

104.    As a direct, legal and proximate result of the defendants' illegal acts and omissions, plaintiff has been damaged and endured violations of her rights to be free from false arrest and imprisonment under the Fourth Amendment; was subjected to an search; was forced to undergo multiple breathalyzer exams; was handcuffed and placed in a police car; was arrested; was deprived of her freedom and enjoyment of life; has experienced

stress and anxiety about visiting her loved ones in the family plot at the cemetery; has experienced stress, mental anguish, humiliation, and damages to her reputation; was required to retain an attorney at attend numerous court appearances; and there are other unknown injuries and damage of which plaintiff is not presently aware.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)    That she be compensated for violation of her rights, pain, suffering, mental anguish, and humiliation in the amount of $1,000,000.00; and

(b)    That she be awarded punitive damages against the individual defendants in the amount of $5,000,000.00; and

(c)    That she be compensated for attorneys' fees and the costs and disbursements of this action; and

(d)    For such other further and different relief as to the Court may seem just and proper.

## SECOND CLAIM – COMMON LAW FALSE ARREST

105.    The allegations contained in paragraphs numbered 1 through 104 are hereby repeated and realleged as if fully set forth herein.

106.    Plaintiff's second claim is against defendants for violation of her rights under

the common law of the State of New York to be free from false arrest and illegal imprisonment.

107.     On July 13, 2014 defendants, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so, arrested plaintiff for driving while intoxicated and deprived plaintiff of her freedom of movement.

108.     In arresting plaintiff's freedom of movement on July 13, 2014 and thereafter, defendants intended to confine her.

109.     Plaintiff was conscious of defendants' confinement of her.

110.     Defendants did not have probable cause to arrest plaintiff for driving while intoxicated.

111.     Defendants did not have a warrant to arrest plaintiff.

112.     Plaintiff did not consent to defendants' confinement of her.

113.     Defendants placed plaintiff Pangburn in handcuffs and arrested plaintiff's movements for approximately three hours without probable cause.

114.     The confinement was not otherwise privileged.

115.     As a direct, legal and proximate result of the defendants' illegal acts and omissions, plaintiff has been damaged and endured violations of her rights to be free from false arrest and imprisonment under the Fourth Amendment; was subjected to an search; was forced to undergo multiple breathalyzer exams; was handcuffed and placed in a police car; was arrested; was deprived of her freedom and enjoyment of life; has experienced

stress and anxiety about visiting her loved ones in the family plot at the cemetery; has experienced stress, mental anguish, humiliation, and damages to her reputation; was required to retain an attorney at attend numerous court appearances; and there are other unknown injuries and damage of which plaintiff is not presently aware.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)     That she be compensated for violation of her rights, pain, suffering, mental anguish, and humiliation in the amount of $1,000,000.00; and

(b)     That she be awarded punitive damages against the individual defendants in the amount of $5,000,000.00; and

(c)     That she be compensated for attorneys' fees and the costs and disbursements of this action; and

(d)     For such other further and different relief as to the Court may seem just and proper.

## THIRD CLAIM – FOURTH AMENDMENT USE OF EXCESSIVE FORCE

116.     The allegations contained in paragraphs numbered 1 through 115 are hereby repeated and re-alleged as if fully set forth herein.

117.     Plaintiff's third claim is against defendants for violation of plaintiff's clearly

established federal constitutional rights to be free from excessive force under the Fourth Amendment to the United States Constitution.

118.     Plaintiff Pangburn was unarmed.

119.     Plaintiff's hands were in plain sight and she cooperated with each and every request made by defendants.

120.     Plaintiff had not engaged in any hostile or violent act toward defendants, nor had she threatened to.

121.     Plaintiff had not displayed or used any hostile, violent, or abusive language toward defendants.

122.     Plaintiff was not engaged in any criminal activity or conduct when she was handcuffed by defendants.

123.     Plaintiff Pangburn had not engaged in any hostile or violent act toward defendants, nor had he threatened to.

124.     The nature of the crime investigated by the defendants concerning plaintiff Pangburn's attendance at a cemetery at night, if a crime had even occurred, was minimal, the perceived threat was not a violent crime, and no violence was directed at the defendants or anyone else.

125.     Plaintiff Pangburn posed no threat, immediate or otherwise, to the safety of the defendants or anyone present at the scene of her arrest on the side of Route 157.

126.     Plaintiff Pangburn was not resisting her arrest in any manner.

127.     Defendants used physical force on plaintiff Pangburn in order to prevent her from walking home.

128.     Defendants used physical force on plaintiff Pangburn in order to grab her arm and put handcuffs on plaintiff's wrists, which caused her to lose her balance and fall down to the ground.

129.     Defendants used physical force to handcuff plaintiff and to place her in the back of an Albany County Sheriff's Department police car.

130.     Defendants' use of force against plaintiff was unreasonable and unnecessary given the circumstances.

131.     Defendants' use of force against plaintiff was not justified or privileged.

132.     Defendants' detainment and handcuffing of plaintiff for approximately three hours constitutes excessive force upon a non-violent offender detained for a non-violent offense who was being held without incident or resistance.

133.     Police officers did not have the legal right to use any force whatsoever to apprehend plaintiff and place her in handcuffs, nor did they have a right to handcuff plaintiff for approximately three hours.

134.     Defendants forcible contact with plaintiff was intentional, willful, malicious and with wanton and gross disregard for plaintiff's safety.

135.     As a direct, legal and proximate result of the defendants' illegal acts and omissions, plaintiff has been damaged and endured violations of her rights to be free from

excessive force under the Fourth Amendment; was subjected to an search; was forced to undergo multiple breathalyzer exams; was handcuffed and placed in a police car; was arrested; was deprived of her freedom and enjoyment of life; has experienced stress and anxiety about visiting her loved ones in the family plot at the cemetery; has experienced stress, mental anguish, humiliation, and damages to her reputation; was required to retain an attorney at attend numerous court appearances; and there are other unknown injuries and damage of which plaintiff is not presently aware.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)     That she be compensated for violation of her rights, pain, suffering, mental anguish, and humiliation in the amount of $1,000,000.00; and

(b)     That she be awarded punitive damages against the individual defendants in the amount of $5,000,000.00; and

(c)     That she be compensated for attorneys' fees and the costs and disbursements of this action; and

(d)     For such other further and different relief as to the Court may seem just and proper.

## FOURTH CLAIM – COMMON LAW ASSAULT AND BATTERY

136.     The allegations contained in paragraphs 1 through 135 are hereby repeated and re-alleged as if fully set forth herein.

137.     Plaintiff Pangburn's fourth claim is against defendants for assault and battery under the common law of New York State.

138.     On July 13, 2014 at approximately 12:00 AM, defendants did intentionally and willfully and wantonly place their hands upon plaintiff in order to force her into handcuffs.

139.     Defendants intended to make bodily contact with plaintiff's body in a forceful manner.

140.     Defendants intended to make their body have offensive contact with plaintiff's body when they grabbed on to her to prevent her from leaving the scene.

141.     As defendants placed plaintiff into handcuffs and to make offensive contact, the plaintiff felt apprehension and fear of the imminent offensive contact.

142.     As defendants placed plaintiff Pangburn into handcuffs they pushed her to the pavement causing her to lose balance and fall to the ground.

143.     Plaintiff experienced reasonable fear and apprehension of forcible contact from the defendants.

144.     Plaintiff did not consent to defendants having offensive bodily contact with

plaintiff.

145.    As a direct result of the said offensive contact, plaintiff suffered physical injuries and pain as a result of being handcuffed for approximately three hours.

146.    Defendants' forcible contact with plaintiff was intentional, willful, malicious and with wanton and gross disregard for plaintiff's safety.

147.    As a direct, legal and proximate result of the defendants' illegal acts and omissions, plaintiff has been damaged and endured violations of her rights to be free from assault and battery under the common law of New York State; was subjected to an search; was forced to undergo multiple breathalyzer exams; was handcuffed and placed in a police car; was arrested; was deprived of her freedom and enjoyment of life; has experienced stress and anxiety about visiting her loved ones in the family plot at the cemetery; has experienced stress, mental anguish, humiliation, and damages to her reputation; was required to retain an attorney at attend numerous court appearances; and there are other unknown injuries and damage of which plaintiff is not presently aware.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)    That she be compensated for violation of her rights, pain, suffering, mental anguish, and humiliation in the amount of $1,000,000.00; and

(b)    That she be awarded punitive damages against the individual defendants in the amount of $5,000,000.00; and

(c)     That she be compensated for attorneys' fees and the costs and disbursements of this action; and

(d)     For such other further and different relief as to the Court may seem just and proper.

## FIFTH CLAIM – FOURTH AMENDMENT UNLAWFUL SEARCH

148.    The allegations contained in paragraphs numbered 1 through 147 are hereby repeated and realleged as if fully set forth herein.

149.    Plaintiff's fifth claim is against the defendants for violation of her clearly established federal constitutional rights to be free from illegal search and seizure of the person under the Fourth Amendment to the United States Constitution.

150.    Plaintiff Pangburn was illegally detained and illegally searched and seized by defendants.

151.    Defendants' unlawful detention of plaintiff constituted an arrest and violated her rights.

152.    Defendants seized plaintiff by restricting her freedom of movement without probable cause when they approached plaintiff Pangburn as she was grieving in the Thompson's Lake cemetery.

153.    Defendants then directed that plaintiff Pangburn perform a series of sobriety

field tests to determine whether or not she was intoxicated.

154.    The sole information defendants relied upon to detain and repeatedly test plaintiff for intoxication was the "the smell of alcohol" in the vehicle that plaintiff had driven to the cemetery many hours before, but was in fact not being operated by plaintiff and was also not running when defendants appeared.

155.    Defendants exceeded the normal bounds of an authorized traffic stop by handcuffing and confining the plaintiff's freedom of movement for approximately three hours while the plaintiff was repeatedly interrogated and was compelled to complete a series of tests to determine whether she was intoxicated.

156.    Defendants violated acceptable police procedures when they conducted a field sobriety test on plaintiff on the side of Route 157.

157.    Defendants did not have a search warrant or the requisite level of probable cause to conduct any field sobriety tests on plaintiff.

158.    Defendants did not have a search warrant or the requisite level of probable cause to detain plaintiff in handcuffs and transport her to the police barracks in handcuffs for a breathalyzer test.

159.    Defendants violated plaintiff's constitutional right to be free from illegal search and seizure.

160.    Defendants lacked specific and articulable facts that would have provided them the probable cause to conduct field sobriety tests.

161.     There were no exigent circumstances that justified conducting field sobriety tests or placing her in handcuffs and transporting her to the police barracks for a breathalyzer test. Defendants had no reason or rationale to believe that plaintiff Pangburn was intoxicated, or that she had been operating a motor vehicle.

162.     As a direct, legal and proximate result of the defendants' illegal acts and omissions, plaintiff has been damaged and endured violations of her rights to be free from false arrest and imprisonment under the Fourth Amendment; was subjected to an search; was forced to undergo multiple breathalyzer exams; was handcuffed and placed in a police car; was arrested; was deprived of her freedom and enjoyment of life; has experienced stress and anxiety about visiting her loved ones in the family plot at the cemetery; has experienced stress, mental anguish, humiliation, and damages to her reputation; was required to retain an attorney at attend numerous court appearances; and there are other unknown injuries and damage of which plaintiff is not presently aware.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)     That she be compensated for violation of her rights, pain, suffering, mental anguish, and humiliation in the amount of $1,000,000.00; and

(b)     That she be awarded punitive damages against the individual defendants in the amount of $5,000,000.00; and

(c)     That she be compensated for attorneys' fees and the costs and disbursements

of this action; and

(d)     For such other further and different relief as to the Court may seem just and proper.

## SIXTH CLAIM—FOURTH AMENDMENT MALICIOUS PROSECUTION

163.     The allegations contained in paragraphs numbered 1 through 162 are hereby repeated and realleged as if fully set forth herein.

164.     Plaintiff's sixth claim is against the defendants for violation of plaintiff's clearly established rights not to be subjected to malicious prosecution under the Fourth Amendment to the United States Constitution.

165.     Defendants without reasonable or probable cause, without a warrant, and without any right or authority to do so, arrested plaintiff on July 13, 2014.

166.     On or about July 15, 2014 defendant Martinez issued two summonses which charged plaintiff with resisting arrest and obstruction of governmental administration, and defendants Martinez and Milano participated in drafting accusatory instruments, supporting depositions, and other paperwork prosecuting plaintiff.

167.     There was no probable cause to prosecute plaintiff for the charges alleged or commence the prosecution of plaintiff for resisting arrest or obstructing governmental administration.

168.     There was no probable cause to believe the prosecution of plaintiff should be commenced or proceed.

169.     Defendants were personally and actively involved in initiating the prosecution against plaintiff by swearing out criminal informations and supporting deposition against plaintiff and causing plaintiff to be arraigned and prosecuted in the Town Court of the Town of Berne.

170.     Defendants were motivated by malice and reckless indifference in initiating the prosecution against plaintiff.

171.     Defendants lacked probable cause to continue criminal proceedings against plaintiff.

172.     Defendants were personally and actively involved in the continuation of criminal proceedings against plaintiff.

173.     Defendants were motivated by malice and reckless indifference in continuing the criminal proceedings against plaintiff.

174.     Defendants Martinez and Milano misrepresented and falsified evidence throughout all phases of the criminal proceedings against plaintiff.

175.     As a result of the prosecution, plaintiff suffered post-arraignment deprivation of liberty and confinement.

176.     On October 9, 2015, the criminal proceedings were terminated in plaintiff's favor in the interest of justice over objections by plaintiff and her defense attorney that she

had been deprived of her right to a jury trial.

177.    As a direct, legal and proximate result of the defendants' illegal acts and omissions, plaintiff has been damaged and endured violations of her rights to be free from malicious prosecution under the Fourth Amendment; was subjected to a search; was forced to undergo multiple breathalyzer exams; was handcuffed and placed in a police car; was arrested and prosecuted; was deprived of her freedom and enjoyment of life; has experienced stress and anxiety about visiting her loved ones in the family plot at the cemetery; has experienced stress, mental anguish, humiliation, and damages to her reputation; was required to retain an attorney at attend numerous court appearances; and there are other unknown injuries and damage of which plaintiff is not presently aware.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)    That she be compensated for violation of her rights, pain, suffering, mental anguish, and humiliation in the amount of $1,000,000.00; and

(b)    That she be awarded punitive damages against the individual defendants in the amount of $5,000,000.00; and

(c)    That she be compensated for attorneys' fees and the costs and disbursements of this action; and

(d)    For such other further and different relief as to the Court may seem just and proper.

## SEVENTH CLAIM – COMMON LAW MALICIOUS PROSECUTION

178.    The allegations contained in paragraphs numbered 1 through 177 are hereby repeated and realleged as if fully set forth herein.

179.    Plaintiff's seventh claim is against the defendants for violation of plaintiff's clearly established rights not to be subjected to malicious prosecution under the common law of the State of New York.

180.    Defendants without reasonable or probable cause, without a warrant, and without any right or authority to do so, arrested plaintiff and swore out criminal informations against plaintiff alleging resisting arrest and obstruction of governmental administration.

181.    There was no probable cause to arrest and commence the prosecution of plaintiff for resisting arrest or for obstruction of governmental administration.

182.    There was no probable cause to believe the prosecution of plaintiff should be commenced or proceed.

183.    Defendants were personally and actively involved in initiating the prosecution against plaintiff by swearing out a criminal information and supporting deposition against plaintiff and causing plaintiff to be arraigned and prosecuted in the Town Court of the Town of Berne and the Town Court of the Town of New Scotland.

184.    Defendants were motivated by malice and reckless indifference in initiating

the prosecution against plaintiff.

185.    Defendants lacked probable cause to detain, arrest, and to continue criminal proceedings against plaintiff.

186.    Defendants were personally and actively involved in the continuation of criminal proceedings against plaintiff.

187.    Defendants were motivated by malice and reckless indifference in continuing the criminal proceedings against plaintiff.

188.    Defendants Martinez and Milano misrepresented and falsified evidence throughout all phases of the criminal proceedings against plaintiff.

189.    On October 9, 2015, the criminal proceedings were terminated in plaintiff's favor in the interest of justice over the objections of plaintiff and her defense attorney that she had been deprived of her right to a jury trial.

190.    As a direct, legal and proximate result of the defendants' illegal acts and omissions, plaintiff has been damaged and endured violations of her rights to be free from malicious prosecution under the common law of the State of New York; was subjected to an search; was forced to undergo multiple breathalyzer exams; was handcuffed and placed in a police car; was arrested and prosecuted; was deprived of her freedom and enjoyment of life; has experienced stress and anxiety about visiting her loved ones in the family plot at the cemetery; has experienced stress, mental anguish, humiliation, and damages to her reputation; was required to retain an attorney at attend numerous court appearances; and

there are other unknown injuries and damage of which plaintiff is not presently aware.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)     That she be compensated for violation of her rights, pain, suffering, mental anguish, and humiliation in the amount of $1,000,000.00; and

(b)     That she be awarded punitive damages against the individual defendants in the amount of $5,000,000.00; and

(c)     That she be compensated for attorneys' fees and the costs and disbursements of this action; and

(d)     For such other further and different relief as to the Court may seem just and proper.

## JURY DEMAND

191.     Plaintiff demands a trial by jury in this action on each and every one of her claims.

DATED:     Albany, New York
              December 23, 2016

                                              ___/S/_____

                                              LEWIS B. OLIVER, JR., ESQ.
                                              Bar Roll No. 102303
                                              Oliver Law Firm
                                              Attorney for Plaintiff Pangburn
                                              156 Madison Avenue
                                              Albany, New York 12202
                                              518-463-7962

-32-